**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

NAKEEM ARCHIE,

                              Plaintiff,

      - v -                                               Civ. No. 9:12-CV-1050
                                                                        (TJM/RFT)

BRIAN FISCHER, *Commissioner of Correctional Services*, DEROUCHIE, *Correctional Officer*, EDDY, *Sergeant*, GALE, *Correctional Officer*, GRANT, *Correctional Officer*, KING, *Correctional Officer*, KOTING, *Correctional Officer*, S. LAMARE, *Correctional Officer*, McBETH, *Correctional Officer*, MILLER, *Correctional Officer*, MITCHEODLY, *Correctional Officer*, ROLFE, *Correctional Officer*, SIMMONS, *Correctional Officer*, ST. MARY, *Correctional Officer*, WINSTON, *Correctional Officer*, WOOD, *Correctional Officer*, JOHN DOE, *Correctional Officer*, SUPERINTENDENT OF UPSTATE CORRECTIONAL FACILITY,

                              Defendants.

**APPEARANCES:**                                      **OF COUNSEL:**

**NAKEEM ARCHIE**
Plaintiff, *Pro Se*
08-B-0539
Upstate Correctional Facility
P.O. Box 2001
Malone, NY 12953

**HON. ERIC T. SCHNEIDERMAN**                 **TIFFINAY M. RUTNIK, ESQ.**
Attorney General of the State of New York      Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, NY 12224

**RANDOLPH F. TREECE**
**United States Magistrate Judge**

## REPORT-RECOMMENDATION and ORDER

*Pro se* Plaintiff Nakeem Archie brings this Complaint pursuant to 42 U.S.C. § 1983, alleging that Defendants, employees at Upstate Correctional Facility ("UCF"): (1) failed to protect him from rival gang members on June 1, 2011, March 22, 2012, and May 15, 2012;[1] (2) retaliated against him on November 13, 2011, November 23, 2011, and April 27, 2012; (3) subjected him to inadequate conditions of confinement on April 27, 2012; and (4) used excessive force against him on May 1, 2012. *See generally* Dkt. No. 1, Compl.[2] Defendants now move for partial summary judgment, pursuant to Federal Rule of Civil Procedure 56, on all of Plaintiff's claims except his May 1, 2012 excessive force claim against Defendants St. Mary, Grant, Gale, Derouchie, Winston, Mitcheodly, Rolfe, Eddy, Lamare, and Wood.[3] They argue, *inter alia*, that: (1) with the exception of his claim that Defendants Wood and King destroyed his personal property, on November 13, 2011, in retaliation for a grievance he filed Plaintiff failed to exhaust any of his claims; (2) Plaintiff failed to state a claim for retaliation regarding the November 13 incident; (3) Plaintiff failed to allege that Defendant Fischer or the Superintendent of Upstate Correctional Facility, Defendant Rock, were personally involved in any constitutional wrongdoing; and (4) Defendants are entitled to qualified and sovereign immunity. *See generally* Dkt. No. 44-1, Defs.' Mem. of Law. For the reasons that follow we recommend that the Defendants' Motion be **GRANTED**.

---

[1] In his Complaint, Plaintiff alleged that Defendants failed to protect him on "June 2011[,]" March 22, 2012, and May 15, 2012. However, Defendants maintain, and Plaintiff concedes in his Response to Defendants' Motion, that the actual dates were June 1, 2011, March 22, 2012, and May 15, 2012. *See* Dkt. No. 46, Pl.'s Resp., at ¶ 3; Dkt. No. 44-1, Defs.' Mem. of Law, at pp. 9-12. Accordingly, we use the latter dates herein.

[2] Plaintiff's action originally included thirteen causes of action and several additional Defendants; however, on November 7, 2012, the Honorable Thomas J. McAvoy, Senior United States District Judge, dismissed four of Plaintiff's claims and multiple Defendants. *See* Dkt. No. 6, Dec. & Order, dated Nov. 7, 2012.

[3] Plaintiff mistakenly refers to Defendant Wood as "Woods." *See* Dkt. No. 44-1, Defs.' Mem. of Law at p. 2.

# I. STANDARD OF LAW

Pursuant to FED. R. CIV. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)). "When a party has moved for summary judgment on the basis of asserted facts supported as required by [Federal Rule of Civil Procedure 56(e)] and has, in accordance with local court rules, served a concise statement of the material facts as to which it contends there exist no genuine issues to be tried, those facts will be deemed admitted unless properly controverted by the nonmoving party." *Glazer v. Formica Corp.*, 964 F.2d 149, 154 (2d Cir. 1992).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials of the facts submitted by the movant. FED. R. CIV. P. 56(c); *see also Scott v. Coughlin*, 344 F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient to defeat a motion for summary judgment when the moving party has set out a documentary case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994). To that end, sworn statements are "more than mere conclusory allegations subject to disregard . . . they are specific and detailed allegations of fact, made under penalty of perjury, and should be treated as evidence in deciding a summary judgment motion" and the credibility of such statements is better left to a trier of fact. *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon*

*v. Coughlin*, 58 F.3d 865, 872 (2d Cir. 1995)).

When considering a motion for summary judgment, the court must resolve all ambiguities and draw all reasonable inferences in favor of the non-movant. *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998). "[T]he trial court's task at the summary judgment motion stage of the litigation is carefully limited to discerning whether there are any genuine issues of material fact to be tried, not to deciding them. Its duty, in short, is confined at this point to issue-finding; it does not extend to issue-resolution." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). Furthermore, where a party is proceeding *pro se*, the court must "read [his or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments that they suggest." *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord*, *Soto v. Walker*, 44 F.3d 169, 173 (2d Cir. 1995). Nonetheless, mere conclusory allegations, unsupported by the record, are insufficient to defeat a motion for summary judgment. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Preliminarily, we note that despite receiving a properly supported Statement of Material Fact Pursuant to Local Rule 7.1(a)(3) ("7.1 Statement") from Defendants, as well as the Court's standard notice of the consequences of failing to properly respond to such a motion from this Court, Plaintiff failed to submit a properly supported 7.1 Statement of his own, or respond substantively to Defendants Motion.[4] *See* Dkt. Nos. 44, Defs.' Notice of Mot., at p. 2 (informing Plaintiff of the consequences of failing to properly respond to their 7.1 Statement), & 44-2, Defs.' 7.1 Statement; Dkt. No. 45, Lt., dated Jan. 31, 2014 (containing the Court's standard notice to *pro se* plaintiffs

---

[4] Plaintiff's Response in Opposition to Defendants' Motion fails to address either exhaustion or personal involvement – two issues, which as explained below, are of central importance to the instant Motion. *See infra* Parts II.B & II.D.

regarding the consequences of failing to properly respond to a defendant's motion for summary judgment); Dkt. No. 46, Pl.'s Opp'n. Accordingly, and notwithstanding the special solicitude ordinarily afforded to *pro se* litigants, for purposes of the instant Motion, we accept as true those statements in Defendants' 7.1 Statement that are properly supported by the record. *See Calloway v. Grimshaw*, 2011 WL 4345299, at *2 (N.D.N.Y. Aug. 10, 2011) (citing, *inter alia*, *Champion v. Artuz*, 76 F.3d 483, 486 (2d. Cir. 1996) for the proposition that "[w]here a plaintiff has failed to properly respond to a defendant's Statement of Material Facts . . . the facts as set forth in that Rule 7.1 Statement will be accepted as true to the extent that (1) those facts are supported by the evidence in the record, and (2) the non-moving party, if he is proceeding *pro se,* has been specifically advised of the potential consequences of failing to respond to the movant's motion for summary judgment."). Furthermore, this Circuit adheres to the view that nothing in Rule 56 imposes an obligation on the court to conduct a search and independent review of the record to find proof of a factual dispute. *Amnesty Am. v. Town of West Hartford*, 288 F.3d 467, 470 (2d Cir. 2002).

With these important caveats in tow, we consider the Defendants' Motion for Partial Summary Judgment.

## II. DISCUSSION

### A. Plaintiff's Claims

Plaintiff's claims that: (1) Defendants Simmons, Miller, and Eddy failed to protect him on June 1, 2011, Dkt. No. 1, Compl., at ¶ 2 & First Cause of Action (hereinafter "COA");[5] (2) on

---

[5] Plaintiff's Complaint contains handwritten pages intermingled with pages from a *pro forma* § 1983 complaint. Although both contain numbered paragraphs they are not sequentially numbered. Therefore, to avoid confusion, when referring to the *pro forma* portion of Plaintiff's Complaint, the Court utilizes the page numbers assigned by the Court's Electronic Case Management system, whereas, when referring to the handwritten portion of Plaintiff's Complaint, we utilize the paragraph numbers assigned by Plaintiff.

November 13, 2011, Defendants Wood and King destroyed Plaintiff's personal property in retaliation for his having filed grievances, *id.* at ¶ 3 & Sixth COA; (3) Defendants McBath, Keating,[6] and Miller failed to protect him on March 22, 2012, *id.* at ¶ 6, & Dkt. No. 6, Decision & Order at p. 6; (4) On April 27, 2012, Defendants Miller and Eddy subjected Plaintiff to inadequate conditions of confinement and filed false misbehavior reports against him in retaliation for grievances he filed, Compl. at ¶ 7 & Eighth COA; (5) Defendants Eddy and John Doe failed to protect him on May 15, 2012, *id.* at ¶ 9 & Eleventh COA; (6) Defendant Fischer had knowledge of these unconstitutional acts but failed to remedy them, *id.* at ¶ 10 & Twelfth COA; and, (7) the Superintendent of Upstate Correctional Facility similarly was on notice but also failed to remedy the alleged constitutional violations, *id.* at ¶ 11 & Thirteenth COA.

## B. Exhaustion

Defendants concede that Plaintiff successfully exhausted his May 1, 2012 excessive force claim (which Defendants do not now move for summary judgment upon) and his November 13, 2011 retaliation claim against Defendants Wood and King. Defs.' Mem. of Law at pp. 5–6. However, Defendants argue that Plaintiff failed to exhaust his administrative remedies with respect to all his other claims. Defs.' Mem. of Law at pp. 3–7.

Pursuant to the Prison Litigation Reform Act ("PLRA") "no action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The Supreme Court has held that "the PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general

---

[6] Plaintiff mistakenly refers to Defendants McBath and Keating as "McBeth" and "Koting." Defs.' Mem. of Law at p. 2.

circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002) (citations omitted). Exhaustion is similarly required even if the prisoner asserts futility as an excuse. *See Booth v. Churner*, 531 U.S. 731, 741 n.6 (2001) (refusing to "read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") (cited in *Marvin v. Goord*, 255 F.3d 40, 43 (2d Cir. 2001)). Accordingly, the exhaustion requirements apply even where the grievance process does not permit an award of money damages and the prisoner seeks only money damages, provided the grievance tribunal has the authority to take some responsive action. *See Thomas v. Wright,* 2002 WL 31309190, at *5 (N.D.N.Y. Oct. 11, 2002) (citing *Booth v. Churner*, 531 U.S. 731 (2001)).

In determining whether a prisoner has failed to exhaust all available administrative remedies, the Second Circuit has instructed district courts to ask: "(1) whether administrative remedies were actually available, (2) whether the defendants forfeited their right to raise the affirmative defense or by their own actions precluded the plaintiff from using administrative grievance procedures, and (3) whether special circumstances have been plausibly alleged that justify the prisoner's failure to comply with administrative procedural requirements." *Singh v. Goord*, 520 F. Supp. 2d 487, 495–96 (S.D.N.Y. 2007) (quoting *Hemphill v. New York*, 380 F.3d 680, 686 (2d Cir. 2004)).

In New York State, the administrative remedies ordinarily consist of a three-step review process. First, a grievance is submitted to the Inmate Grievance Resolution Committee ("IGRC"), a committee comprised of both inmates and facility employees.[7] N.Y. COMP. CODES R. & REGS. tit. 7, § 701.5(b). The IGRC reviews and investigates the formal complaints and then issues a written determination. *Id*. Second, if the IGRC decision is appealed, the superintendent of the facility

---

[7] The IGRC is a five-member body consisting of two voting inmates, two voting staff members, and a non-voting chair (who may be an inmate, staff member of volunteer). N.Y. COMP. CODES R. & REGS tit.7, § 701.4.

reviews the IGRCs determination and issues a decision. *Id*. at § 701.5(c). Finally, if the superintendent's decision is appealed, the Cental Office Review Committee ("CORC") makes the final administrative determination. *Id*. at § 701.5(d). Only upon exhaustion of these three levels of review may a prisoner seek relief pursuant to § 1983 in federal court. *Bridgeforth v .Bartlett*, 686 F. Supp. 2d 238, 239 (W.D.N.Y. 2010) (citing, *inter alia*, *Porter v. Nussle*, 534 U.S. 516, 524 (2002)); *see also Neal v. Goord*, 267 F.3d 116, 121 (2d Cir. 2001), *overruled on other grounds by Porter v. Nussle*, 534 U.S. 516.

Additionally, there is an expedited procedure for the review of grievances alleging harassment. N.Y. COMP. CODES R. & REGS. tit. 7, § 701.8. Once it is determined that the grievance presents a "bona fide harassment issue" the Superintendent is required to initiate an in-house investigation, and within twenty-five (25) calender days of receipt of the grievance, the superintendent must render a decision. *Id.* at § 701.8(d). If the superintendent fails to respond within the required twenty-five (25) day time limit, the grievant may appeal directly to CORC by filing a Notice of Decision to Appeal (Form #2133) with the inmate grievance clerk. *Id.* at § 701.8(g). CORC then has thirty (30) calender days from the time the appeal was received to render a decision. *Id.* at § 701.5(d)(3).

It is undisputed that in the months surrounding the period relevant to the instant Complaint, between February of 2011 and July, 1, 2012, Plaintiff filed approximately six grievances at UCF. Dkt. No. 44-17, Brandi White Decl., dated Jan. 28, 2014, at ¶¶ 7–12 & Ex. A, Pl.'s Grievance R. However, of those grievances, Plaintiff appealed only two all the way to CORC, his grievance relative to the May 1, 2012 excessive force claim (which Defendants do not now move to dismiss), and his grievance pertaining to his claim that Defendants Wood and King destroyed his personal

property on November 13, 2011, in retaliation for his having filed an earlier grievance. *Id.* at Exs. B & E. Although Plaintiff claims that he grieved nearly all of his claims, he does so in only the most conclusory fashion; he fails to provide any factual information whatsoever as to the dates and times he filed his grievances, what information he provided in his grievances, and when or if he properly appealed those grievances. *See, e.g.,* Archie Dep. at pp. 31, 45, & 52; *see also* Compl. at ¶ 10. Such bald assertions are insufficient as a matter of law to create a material issue of fact in light of the Defendants' well supported Motion. *See Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991).

Accordingly, Defendants have established that, with the exception of his November 13, 2011 retaliation claim against Defendants Wood and King, there are no outstanding genuine issues of material fact with regard to whether Plaintiff properly exhausted any of the claims Defendants no move for summary judgment upon. *See Bridgeforth v. Bartlett*, 686 F. Supp. 2d at 239 & N.Y. COMP. CODES R. & REGS tit.7, § 701.5(d) (noting that in order to fully exhaust administrative remedies in New York, a prisoner must appeal his grievance all the way to the CORC).

It is undisputed that there was a prisoner grievance procedure available at UCF. Compl. at p. 2. Thus, it is clear that administrative remedies were available to Plaintiff. *See Calloway v. Grimshaw*, 2011 WL 4345299, at *2 (noting that a prisoner's acknowledgment on a pre-made complaint is sufficient to establish the availability element).

Additionally, Defendants properly raised the affirmative defense of exhaustion in their Answer to Plaintiff's Complaint. Dkt. No. 33, Answer, at Ninth Defense. Thus, they have not forfeited the exhaustion defense. Moreover, Plaintiff failed to address the issue of exhaustion in his Response to Defendants' Motion. *See generally* Pl.'s Resp. As a result, the Court is unaware of any facts which suggest that Defendants should be estopped from raising the affirmative defense of

exhaustion, or that any special circumstances warrant granting Plaintiff a reprieve from the PLRA's exhaustion requirement.

Accordingly, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** as to his claims that: (1) Defendants Simmons, Miller, and Eddy failed to protect him on June 1, 2011; (2) Defendants McBath, Keating, and Miller failed to protect him on March 22, 2012; (3) Defendants Miller and Eddy subjected Plaintiff to inadequate conditions of confinement and filed false misbehavior reports against him on April 27, 2012, in retaliation for grievances he filed; (4) Defendants Eddy and John Doe failed to protect him on June 15, 2012.

### C. Retaliation

Plaintiff alleges that on or about November 13, 2011, Defendants Wood and King destroyed his personal property, including his legal papers, books, and family photographs, in retaliation for a grievance he filed earlier.[8] Compl. at ¶ 3; *see also* White Decl. at Ex. B, Grievances, dated Dec. 7, 2011 & Nov. 15, 2011.

The Second Circuit has made it clear that an inmate has a substantive due process right not to be subjected to retaliation for the exercise of a constitutional right, such as petitioning the government for redress of grievances. *Jones v. Coughlin,* 45 F.3d 677, 679-80 (2d Cir. 1995); *Franco v. Kelly,* 854 F.2d 584, 589-90 (2d Cir. 1988). Claims of retaliation, like those asserted by Plaintiff, find their roots in the First Amendment. Central to such claims is the notion that in a prison setting, corrections officials may not take actions which would have a chilling effect upon an inmate's exercise of First Amendment rights. *Gill v. Pidlypchak*, 389 F.3d 379, 381-83 (2d Cir. 2004).

---

[8] Plaintiff does not clarify when he filed the earlier grievance.

Because of the relative ease with which claims of retaliation can be invoked, courts should examine such claims "with skepticism and particular care." *Colon v. Coughlin*, 58 F.3d at 872 (citation omitted); *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001), *overruled on other grounds*, *Swierkewicz v. Sorema N.A.*, 534 U.S. 506 (2002) ("[V]irtually any adverse action taken against a prisoner by a prison official—even those otherwise not rising to the level of a constitutional violation—can be characterized as a constitutionally proscribed retaliatory act." (citation omitted)); *see also Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996).

To state a First Amendment claim for retaliation, an inmate must demonstrate (1) he or she was engaged in constitutionally protected activity, (2) the defendant took adverse action against the plaintiff, and (3) there was a causal connection between the protected activity and the adverse action in that the alleged conduct was substantially motivated by the protected activity. *Gill v. Pidlypchak*, 389 F.3d at 380 (citing *Dawes v. Walker*, 239 F.3d at 492); *see also Morales v. Mackalm*, 278 F.3d 126, 131 (2d Cir. 2002).

The plaintiff bears the initial burden in showing that the defendant's actions were improperly motivated. To satisfy the second prong, a prisoner must present evidence inferring that a defendant acted with an improper motive. Such evidence includes: (1) temporal proximity between the protected activity and the alleged retaliatory act; (2) plaintiff's prior good disciplinary record; (3) plaintiff's vindication at his disciplinary hearing; and (4) defendants' statements regarding their motive for the discipline. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). A plaintiff may meet this burden by presenting circumstantial evidence of a retaliatory motive, thus obviating the need for direct evidence. *Bennett v. Goord*, 343 F.3d 133, 139 (2d Cir. 2003) (holding that plaintiff met his burden in proving retaliatory motive by presenting circumstantial evidence relating

to, *inter alia*, the temporal proximity of allegedly false misbehavior reports and the subsequent reversal of the disciplinary charges on appeal as unfounded). "Only retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Davis v. Goord*, 320 F.3d 346, 353 (2d Cir. 2003) (citing *Dawes v. Walker*, 239 F.3d at 493). Otherwise, the retaliatory act is "*de minimis* and therefore outside the ambit of constitutional protection." *Dawes v. Walker*, 239 F.3d at 493. Furthermore, in satisfying the causal connection requirement, also known as temporal proximity, the allegations must be "sufficient to support the inference that the speech played a substantial part in the adverse action." *Id*. at 492 (internal quotation marks and citations omitted) (cited in *Davis*, 320 F.3d at 353).

Here, Plaintiff cannot sustain a retaliation claim against Defendants Wood and King for the alleged destruction of his property on November 13, 2011. Indeed, Plaintiff admitted at his deposition that prior to November 13, 2011, he had not filed any grievances about any issues he experienced because he did not want to tell on anyone. *See* Dkt. Nos. 44-13 & 44-14, Tiffinay M. Rutnik, Esq., Decl., dated Jan. 31, 2014, at Ex. B, Nakeem Archie Dep., dated Nov. 7, 2013 (hereinafter "Archie Dep."), at pp. 21 & 24. It is undisputed that the first grievance Plaintiff filed at UCF was on November 15, 2011 – two days after the alleged act of retaliation occurred. White Decl. at ¶¶ 5–12, Ex. A Pl.'s Grievance R., & Ex. B, Grievance, dated Nov. 15, 2011. Therefore, even if we accept as true Plaintiff's claims that Defendants Wood and King destroyed his personal property on November 13, 2011, there is absolutely nothing to suggest that this act was causally connected to the grievance he filed two days later on November 15, 2011. Moreover, Plaintiff has failed to identify any other protected exercise in which he was engaged prior to the alleged

destruction of his personal property.

Therefore, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's claims that Defendants Wood and King retaliated against him on November 13, 2011.

### D. Supervisory Liability

Plaintiff alleges that he alerted the Superintendent of UCF, Defendant Rock, and the Commissioner of DOCCS, Defendant Fischer, of the allegedly unconstitutional acts of the Defendants and that they failed to take action to remedy the situation. Compl. at ¶¶ 10–11 &Twelfth–Thirteenth COA.

It is well established that the "personal involvement of defendants in alleged constitutional deprivation[] is a prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (citations omitted). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d at 874 & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the constitution." *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009). The Second Circuit has determined that:

> The personal involvement of a supervisory defendant may be shown by evidence that: (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).

It is undisputed that Defendant Fischer was not present during any of the alleged constitutional violations that occurred at UCF. Archie Dep. at pp. 60–63; Dkt. No. 44-6, Brian Fischer Decl., dated Jan 25, 2014, at ¶¶ 9–10. Plaintiff sent a single letter[9] to Defendant Fischer on February 21, 2012, describing various issues Plaintiff was experiencing at UCF. Fischer Decl. at ¶ 9 & Ex. A, Lt., dated Feb 21, 2012. Defendant Fischer's administrative staff then forwarded the letter to Deputy Commissioner Joseph F. Bellnier, who conducted an investigation into Plaintiff's allegations and responded to his letter on behalf of Defendant Fischer. Fischer Decl. at ¶¶ 4–7 & Ex. C, Lt., dated Apr. 13, 2012.

Likewise, Defendant Rock's only involvement in the instant case occurred on June 4, 2012, when he received an email from Steven Bullis,[10] advising him that during a disciplinary hearing, Plaintiff claimed that he had been assaulted by staff on the morning of April 27, 2012, and again on May 1, 2012. Dkt. No. 44-12, David Rock Decl., dated Jan. __, 2014, at ¶¶ 8, 10, 11, & Ex. A, Email, dated June 4, 2012. Defendant Rock forwarded the email to Donald Uhler, the Deputy Superintendent of Security, for an official investigation. Rock Decl. at ¶ 9 & Ex. A, Email, dated June 5, 2012.

The fact that Plaintiff may have written a letter does not automatically render the supervisory

---

[9] At his Deposition Plaintiff testified, in a conclusory fashion, that he sent Defendant Fischer at least three letters. Archie Dep. at p. 62. However, Plaintiff fails to state either in his Complaint, Response to Defendants' Motion, or Deposition any details about when such letters were sent and what, if anything, they contained in relation to the instant action. Such bald assertions are insufficient as a matter of law to create a material issue of fact in light of the Defendants' well supported Motion establishing that Plaintiff only sent one letter to Defendant Fischer. *See generally* Fischer Decl.; *see also Carey v. Crescenzi*, 923 F.2d at 21.

[10] At his Deposition Plaintiff testified that he wrote to Defendant Rock multiple times; however, he fails to provide any details whatsoever regarding the dates such letters were sent or the contents thereof. Archie Dep. at pp. 62–63. Likewise in his Complaint, Plaintiff baldly asserts that he "contacted [Defendant Rock] and informed him of the officers threats . . . and nothing was done[,]" without providing any additional details. Compl. at ¶ 11. Such bald assertions are insufficient as a matter of law to create a material issue of fact in light of the Defendants' well supported Motion establishing that Defendant Rock's only knowledge of Plaintiff's allegations came *via* a single email. *See generally* Dkt. No. 44-12, David Rock Decl., dated Jan. 2014; *see also Carey v. Crescenzi*, 923 F.2d at 21.

official responsible for any constitutional violation. *See Thomas v. Coombe*, 1998 WL 391143, at *6 (S.D.N.Y. July 13, 1998) (citations omitted) (ignoring letter is insufficient for personal involvement); *Young v. Kihl*, 720 F. Supp. 22, 23 (W.D.N.Y. 1989) (citations omitted) (the wrong must have been capable of mitigation at the time the supervisory official was apprised thereof); *Woods v. Goord*, 1998 WL 740782, at *6 (S.D.N.Y. Oct. 23, 1998) (citations omitted) (receiving letters or complaints does not automatically make a supervisor liable for the denial of medical care). Prison supervisors cannot be deemed personally involved based simply on a response to a complaint. *See Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997). "It is now well-settled that the failure of a supervisory official to investigate a letter of protest written by an inmate is not sufficient to show personal involvement." *Silvagnoli v. Fischer*, 2010 WL 1063849, at *8 (N.D.N.Y. Mar. 1, 2010) (citing *Smart v. Goord*, 441 F. Supp. 2d 631, 642-43 (S.D.N.Y. 2006)). "The same is true if the only involvement of the supervisory official is to refer the inmate's complaint to the appropriate staff for investigation." *Id.* (citing *Ortiz-Rodriguez v. N.Y. State Dep't of Corr. Servs.*, 491 F. Supp. 2d 342, 347 (W.D.N.Y. 2007)).

Accordingly, we recommend that Defendants' Motion be **GRANTED** with respect to Plaintiff's allegations against Defendants Rock and Fischer because Plaintiff fails to allege their personal involvement in any constitutional wrongdoing.

### E. Qualified Immunity

Defendants Maintain that they are entitled to qualified immunity. Defs.' Mem. of Law at pp. 21–22. However, in light of our Recommendation above, we need not, and do not, discuss qualified immunity.

**F. Sovereign Immunity**

Defendants argue that they are entitled to sovereign immunity. Defs.' Mem. of Law at p. 23. The Eleventh Amendment states, "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although by its terms, the amendment bars suit by citizens of one state against another state, the Supreme Court has held that such amendment similarly bars suits against a state by its own citizens. *Hans v. Louisiana*, 134 U.S. 1 (1890). "The Eleventh Amendment thus 'affirm[s] that the fundamental principle of sovereign immunity limits the grant of judicial authority in Art. III.'" *Richardson v. New York State Dep't of Corr. Servs.*, 180 F.3d 426, 447-48 (2d Cir. 1999) (citing *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 98 (1984)). Thus, sovereign immunity provided for in the Eleventh Amendment prohibits suits against the state, including a state agency in federal court. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. at 98-101; *Severino v. Negron*, 996 F.2d 1439, 1441 (2d Cir. 1993); *Daisernia v. State of New York*, 582 F. Supp. 792, 796 (N.D.N.Y. 1984). To the extent a state official is sued for damages in his or her official capacity, "such a suit is deemed to be a suit against the state, and the official is entitled to invoke the eleventh amendment immunity belonging to the state." *Rourke v. New York State Dep't. of Corr. Servs.* 915 F. Supp. 525, 539 (N.D.N.Y. 1995) (citing *Berman Enters., Inc. v. Jorling,* 3 F.3d 602, 606 (2d Cir.), *cert. denied,* 510 U.S. 1073 (1994); *Ying Jing Gan v. City of New York,* 996 F.2d 522, 529 (2d Cir. 1993)); *see also Mathie v. Fries*, 121 F.3d 808, 818 (2d Cir. 1997) ("A claim against a government officer in his official capacity is, and should be treated as, a claim against the entity that employs the officer . . . .").

However, whether state officials sued in their official capacities are entitled to Eleventh Amendment immunity depends also upon the relief sought in the complaint. The Second Circuit has held that in accordance with *Ex parte Young*, 209 U.S. 123 (1908), "acts of state officials that violate federal constitutional rights are deemed not to be acts of the state and may be subject of injunctive or declaratory relief in federal court." *Berman Enters., Inc. v. Jorling,* 3 F.3d at 606 (citations omitted); *see also Rourke v. New York State Dep't of Corr. Servs.*, 915 F. Supp. at 540. Here, Plaintiff seeks declaratory and monetary relief. *See* Compl. at p. 18. Accordingly, we recommend that Defendants' Motion for Summary Judgment be **GRANTED** with respect to Plaintiff's surviving excessive force claim and his request for monetary relief against Defendants St. Mary, Grant, Gale, Derouchie, Winston, Mitcheodly, Rolfe, Eddy, Lamare, and Wood in their official capacities.

### III. CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Partial Summary Judgment (Dkt. No. 44) be **GRANTED**, with respect to all of Plaintiff's remaining claims except his May 1, 2012 excessive force claim, and that Defendants Rock, Fischer, King, Keating, McBath, Miller, Simmons, and John Doe, be **DISMISSED** from this action; and it is further

**RECOMMENDED**, that Defendants' Motion for Partial Summary Judgment (Dkt. No. 44) be **GRANTED** with respect to Plaintiff's request for monetary relief against Defendants St. Mary, Grant, Gale, Derouchie, Winston, Mitcheodly, Rolfe, Eddy, Lamare, and Wood in their official capacities arising out of Plaintiff's surviving excessive force claim; and it is further

**RECOMMENDED**, that to the extent the District Judge accepts our Recommendation, the

instant case be deemed **TRIAL READY**, with respect to Plaintiff's surviving excessive force claim against Defendants St. Mary, Grant, Gale, Derouchie, Winston, Mitcheodly, Rolfe, Eddy, Lamare, and Wood in their personal capacities only; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days within which to file written objections to the foregoing report. Such objections shall be filed with the Clerk of the Court. **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.** *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date: June 9, 2014
Albany, New York

Randolph F. Treece
U.S. Magistrate Judge